MAXWELL, J.,
for the Court:
¶ 1. A jury in the Harrison County Circuit Court found Ray Allen Newberry guilty of cocaine possession. The circuit court sentenced him as a habitual offender to life imprisonment without eligibility for parole or probation. Though the State had moved to amend his indictment to seek habitual-offender status six days in advance of trial, the circuit judge held the motion in abeyance and did not grant the amendment until after trial. On appeal, Newberry claims he was unfairly surprised by the amendment. However, the record shows Newberry was fully aware that based on his qualifying convictions he faced life imprisonment. Yet he rejected the State’s pretrial plea offer to recommend an eight-year sentence. Because we find he was not unfairly surprised by the *886 amendment to his indictment and resulting life sentence, we affirm.
FACTS
¶ 2. A Gulfport Police Officer stopped Newberry’s vehicle for driving without a tag light and a window-tint violation. The officer arrested Newberry for driving without a license. After performing a pat down, the officer discovered two white rocks, later identified as crack cocaine, in Newberry’s pocket.
¶ 3. A Harrison County grand jury returned an indictment charging Newberry with possessing .1 gram but less than 2 grams of cocaine in violation of Mississippi Code Annotated section 41-29-139(c)(l)(B) (Rev.2009). The sentencing range under this section is two to eight years’ imprisonment and up to a $50,000 fine. Id.
¶ 4. Six days before trial, the State filed a motion to amend Newberry’s indictment to charge habitual-offender status under Mississippi Code Annotated section 99-19-83 (Rev.2007),[1] which provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
The State’s motion specifically sought to amend the indictment “to reflect the habitual status of the said RAY ALLEN NEW-BERRY (A.K.A. RAMOND ALLEN WRIGHT).” And it detailed Newberry’s four prior convictions obtained under his alias, which qualified him for habitual-offender status:
(1) On November 23, 1973, ... RAYMOND ALLEN WRIGHT ... was convicted in the Circuit Court of Harrison County, Mississippi, in Cause Number 497 of the felony of Armed Robbery, and ... was sentenced to a term of three (3) years in the custody of the Mississippi Department of Corrections [ (MDOC) ], said crime being a crime of violence, and that he ... did serve one (1) year or more in the state penitentiary on said conviction;
(2) On October 17, 1976, ... RAYMOND ALLEN WRIGHT ... was convicted in the Circuit Court of Harrison County, Mississippi, in Cause Number 16,169 of the felony of Armed Robbery, and ... was sentenced to a term of twenty (20) years in the custody of [MDOC], said crime being a crime of violence, and that he ... did serve one (1) year or more in the state penitentiary on said conviction;
(3) On February 22, 1980, ... RAYMOND ALLEN WRIGHT ... was convicted in the Circuit Court of Sunflower County, Mississippi, in Cause Number 8492 of the felony of Escape, and ... was sentenced to a term of five (5) years in the custody of [MDOC], and that he ... did serve one (1) year or more in the state penitentiary on said conviction;
*887 (4) On November 7, 1985, ... RAYMOND ALLEN WRIGHT ... was convicted in the Circuit Court of Harrison County, Mississippi, in Cause Number 4886 of the felony of Grand Larceny, and ... was sentenced to a term of five (5) years in the custody of [MDOC], and that he ... did serve one (1) year or more in the state penitentiary on said eonviction[.]
After voir dire and the State’s opening statement,[2] but before any witnesses testified, Newberry’s attorneys stated for the record that they had advised Newberry that “the [SJtate’s recommendation was eight years, and that would have been eight years parolable.” They further explained they had told Newberry if he “chose not to accept that recommendation that the [S]tate was going to file a motion to amend him to the status of life habitual ... [meaning] the Court would be obligated to give him a life sentence if he were in fact convicted.” According to Newberry’s attorneys, after numerous consultations with Newberry, he decided to go to trial. The circuit court then questioned Newber-ry to ensure he agreed with his attorneys’ summary of the advice he had been given:
[The Court]: Have your attorneys advised you that the recommendation of the State in this case was an eight year sentence, which would be parola-ble?
[Newberry]: Yes, they did.
[[Image here]]
[The Court]: And have they advised you that if that recommendation was not taken that the [S]tate was going to move to amend your case to make you eligible as a life habitual, which means that if you’re convicted by this jury the Court would be obligated to sentence you to the rest of your life in the penitentiary without the possibility of parole.
[Newberry]: Yeah, she did.
[The Court]: They told you that?
[Newberry]: Yeah.
Before calling its first witness, the State followed up on its motion to amend the indictment “under Section 99-19-83 making Mr. Newberry a life habitual[.]” New-berry’s attorney objected, responding that “both of the pen packs submitted ... are in the name of Raymond Wright[.]” The State explained that the name “Wright” had been used as an alias by Newberry, and the records showed “Wright” had the same social security number and date of birth as Newberry. Instead of ruling on the State’s motion, the circuit judge held the matter in abeyance “until the sentencing phase of the case if Mr. Newberry is found guilty[.]” The judge made clear that in the event of a conviction, the State would have to prove Newberry and Wright were the same person.
¶ 5. The jury convicted Newberry of cocaine possession. Two days later, the circuit judge held a hearing to determine whether Newberry had obtained prior qualifying convictions under the assumed name “Wright.” At the hearing, the State called Detective Chris Baker, an expert in fingerprint analysis. Detective Baker compared Newberry’s fingerprint cards from the Gulfport Police Department to those associated with the prior convictions under the name ‘Wright” in the pen pack from MDOC. Detective Baker found the comparisons revealed “[b]eyond any doubt” that Newberry was the same person as Wright. Newberry presented no contrary proof. The circuit court amended the indictment based on this evidence without any objection by Newberry. The *888 court then entered a written order amending the indictment, which contained all of the relevant details concerning Newberry’s prior convictions. See URCCC 11.03(1). Following the amendment, the State moved to adjudicate Newberry a habitual offender for sentencing purposes under section 99-19-83. It submitted certified copies of Newberry’s pen packs from MDOC into evidence to establish his prior felony convictions. Finding Newberry qualified as a habitual offender under section 99-19-83, the circuit court sentenced him to the mandated sentence — life imprisonment.
¶ 6. Newberry filed a motion for new trial. Among other claims, Newberry argued the circuit court erred by granting the State’s motion to amend his indictment, although he cited no specific reason why the amendment was error. The circuit court denied the motion.
DISCUSSION
¶ 7. Newberry raises one assignment of error on appeal — that he did not receive fair notice of the State’s intent to charge him as a habitual offender. He requests that we vacate his sentence and remand for resentencing.
I. Waiver
¶ 8. We first consider whether Newberry properly preserved this issue for appeal. When the State first moved to amend Newberry’s indictment, he objected to the amendment for a reason unrelated to the notice-based concerns he now raises. Newberry objected that the State failed to prove he used the alias “Wright.” After deferring ruling on the matter, when the circuit court revisited the issue at sentencing, Newberry raised no objection to the amendment.[3] We find his failure to object is a procedural bar to our consideration of this issue on appeal. Manuel v. State, 813 So.2d 762, 764 (¶4) (Miss.Ct.App.2002) (citing Swington v. State, 742 So.2d 1106, 1112 (¶ 14) (Miss.1999)) (finding failure to object in the trial court to amendment to an indictment bars the issue for appeal); see also Swington, 742 So.2d at 1112 (¶ 14) (explaining a specific and contemporaneous objection is required to preserve an issue for appellate review). Though Newberry raised the issue of the amendment of his indictment in his post-trial motion, we find the objection was not sufficiently specific. He made no mention of issues such as notice or surprise. And it does not suffice to simply state, as Newberry did, that the circuit court erred in allowing an amendment to the indictment, and nothing more. Even assuming his objection had the required specificity, Newberry was precluded from raising the issue for the first time in his motion for new trial. Ross v. State, 954 So.2d 968, 987-88 (¶ 30) (Miss.2007).
¶ 9. Although this issue is procedurally barred, we will address the merits of New-berry’s argument.
II. Amendment to the Indictment
A. General Requirements
¶ 10. Uniform Rule of Circuit and County Court 11.03(1) mandates an indictment:
must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment.
*889 Id. Regarding the amendment of indictments, Uniform Rule of Circuit and County Court 7.09 instructs:
All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as [a] habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss.Code Ann. § 63-11-30). Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
(Emphasis added). “Thus, an indictment may be amended to charge [habitual-offender status] only if the offender is given a ‘fair opportunity to present a defense and is not unfairly surprised.’ ” Wilson v. State, 935 So.2d 945, 949 (¶ 10) (Miss.2006) (quoting URCCC 7.09). While Rule 7.09 “does not speak to the timing of the amendment,” it instructs that “the defendant must be ‘afforded a fair opportunity to present a defense’ and ‘not be unfairly surprised.’ ” Gowdy v. State, 56 So.3d 540, 545 (IT 16) (Miss.2010) (quoting URCCC 7.09). “This means that the defendant must be afforded due process of law and be given fair notice of ‘the nature and cause of the accusation.’ ” Id. (citing U.S. Const. amends. VI, XIV; Miss. Const. art. 3, §§ 14, 26).
¶ 11. We find no error in the amendment to Newberry’s indictment. The amendment did not affect his defense to the underlying charge of possessing cocaine. Burrell v. State, 726 So.2d 160, 162 (¶ 4) (Miss.1998) (Habitual-offender status “only affects sentencing and does not affect the substance of the offense charged.”); Wilson, 935 So.2d at 949 (¶ 12) (“[Pjrior offenses used to charge the defendant as [a] habitual offender are not substantive elements of the offense charged.”); Adams v. State, 772 So.2d 1010, 1021 (¶ 52) (Miss.2000). Nor does Newberry contend the delayed amendment prejudiced his defense against the habitual-offender charge. Not only did Newber-ry offer no evidence during the sentencing hearing contesting the habitual-offender charge, he makes no argument now that any evidence exists contradicting the State’s proof. Further, there is no unfair surprise. The State filed a motion to amend six days in advance of trial detailing the offenses qualifying Newberry for habitual-offender status. And the record shows Newberry was well aware that he faced a life sentence if he rejected the State’s proposed plea bargain and proceeded to trial.
B. Gowdy
¶ 12. Recently, the Mississippi Supreme Court in Gowdy, 56 So.3d at 544-46 (¶¶ 14-22), held that if a defendant has no pretrial notice of the State’s intent to amend an indictment to seek enhanced penalties based upon habitual-offender status, the amendment is impermissible. Defendant Gowdy, charged with felony DUI, rejected a plea deal where the State would have recommended a one-year sentence. Not knowing the State planned to seek a habitual-offender sentencing enhancement, Gowdy chose to forgo the capped plea recommendation and exercise his right to trial by jury. Immediately after the jury rendered a guilty verdict, the State for the first time provided Gowdy notice of its intent to amend his indictment to charge him as a habitual offender. Two months after trial, and just before the sentencing hearing, the circuit court allowed the amendment over Gowdy’s objection and sentenced Gowdy to life. In discussing the *890 impropriety of the amendment, the supreme court in Gowdy stated:
There is no incentive for the State to be diligent in obtaining a prospective indict-ee’s criminal record in advance of presenting a new charge to a grand jury and timely complying with Rule 11.03 if it may simply amend the indictment at any time before sentencing. Had that occurred in this case, Gowdy would have been in a better position to make an informed and rational decision when presented with a proposed plea bargain. ... [N]otice of the charge includes notice of the applicable minimum and maximum penalties. Under Rule 8.04(A)(4)(b), before a defendant can plead guilty, the trial court has a duty to ensure that he “understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law.” The rule should not be different for defendants who choose to exercise their right to trial by jury.
Id. at 546 (¶¶ 20-21).
¶ 13. The Gowdy court relied on its prior decision in Akins v. State, 493 So.2d 1321 (Miss.1986). Just as in Gowdy, in Akins, the defendant had no notice of the State’s intent to amend the indictment until after trial. The Akins court held the post-trial amendment, which substituted the more severe habitual-offender sentencing enhancement,[4] carrying a mandatory life sentence, for the lesser enhancement,[5] was impermissible. Akins, 493 So.2d at 1322. The Gowdy majority recognized the supreme court had been inconsistent on the issue of post-trial notice of intent to seek habitual-offender status. Thus, the Gowdy majority chose to overrule its previous decision in Torrey v. State, 891 So.2d 188, 194-95 (¶¶ 35-39) (Miss.2004), where the supreme court had found no reversible error in a post-trial amendment to an indictment adding a habitual-offender charge, to the extent it conflicted with Gowdy's holding. Gowdy, 56 So.3d at 546 (¶ 22).
¶ 14. Though Newberry argues Gowdy ⅛ dictates prevent application of the habitual-offender status in his case, we find the procedural and factual posture of Newberry’s case differs vastly from Gow-dy. Unlike in Gowdy, here the State was diligent in obtaining Newberry’s criminal record. The State filed a motion to amend Newberry’s indictment before trial. And the State’s motion properly detailed the qualifying offenses for habitual-offender status. The circuit court heard argument on the amendment before any witnesses testified at Newberry’s trial. Further, when the circuit court ordered the amendment, Newberry failed to object. These are all considerations that were absent from the supreme court’s decision in Gow-dy. We also note that Newberry altogether failed to object to the amendment on the specific ground of unfair surprise or based upon Rule 7.09.
¶ 15. We also emphasize that unlike the defendant in Gowdy, Newberry knew during plea negotiations that the State sought to charge him as a habitual offender. Confronted with obvious notice of the potential life sentence, Newberry rejected the State’s offer. We therefore find New-berry’s complaints about unfair surprise are unfounded.
¶ 16. Sufficient formal notice of the State’s intent to seek habitual-offender status is the controlling aspect, not the timing of the court’s ruling on the requested amendment. We do not find that our supreme court in Gowdy intended to establish an absolute, indispensable rule that *891 a trial judge’s decision to withhold ruling on the State’s request to amend an indictment to allege habitual-offender status creates an unfair surprise. Indeed, if that were the case, a circuit judge could frustrate the Legislature’s clear sentencing directives for qualifying habitual offenders, by simply holding in abeyance his or her decisions on motions to amend indictments to seek habitual-offender status.
¶ 17. Without question, Newberry had sufficient pretrial notice of the habitual-offender charge, including the prior convictions relied on by the State. We find the notice provided was ample to allow him to prepare a defense against the habitual-offender charge, to which he apparently had no defense. The pretrial notice also allowed Newberry to make an informed decision whether to accept the State’s proposed plea recommendation, which he chose to reject fully knowing the potential consequences of doing so.
¶ 18. For these reasons, we affirm Newberry’s conviction and sentence.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF LIFE AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.

. The State filed its motion to amend the indictment on March 11, 2009. Newberry's trial took place on March 17, 2009.

. Defense counsel declined to give an opening statement.

. We note Newberry objected to the admission of the certified copies of the pen packs into evidence.

. See Mississippi Code Annotated section 99-19-83.

. See Mississippi Code Annotated section 99-19-81 (Rev.2007).